even do this after he has made a fraudulent transfer, provided the fraudulent transferee assents and assists. *Murphy* v. *Briggs, supra.*

At the time of the assignment the equities in favor of plaintiffs were no greater or stronger than in favor of the bank. By direction of the assignor and assent of the assignee, and in spite of the fraud originally committed, the payment here finally went to pay an honest debt before any creditor secured a specific lien. As stated in *Murphy* v. *Briggs:* "The law does not deprive parties of the right to restore property to legitimate purposes which has been fraudulently appropriated." "The mortgages were only an appropriation of Moore's property to the payment of his honest debts, and whether this was done by the grantee of the same, with Moore's approval, or by Moore himself, could make no difference. If the title was in Moore (the debtor) he could have given a preference and created a lien to pay the indebtedness of the mortgagees, and the grantee having, with Moore's consent, done what the grantor could have done by applying the property to pay the demands of creditors, there is no ground for claiming that such transfer was invalid. * * * The rights of the mortgagees, as creditors, to have their debts preferred by the mortgages on the property of the debtor are equally equitable with the claims of the creditors, and no valid ground is apparent why they should be placed behind other creditors, when the liens of the latter are of a later date." Applying, therefore, the principle that a debtor (by a valid or fraudulent instrument) may himself or through an agent prefer or pay any claim; that a creditor with the assent of the debtor and the person having property or money of the debtor can apply it to the payment of his debt; that the equities of the creditors when the payment was made were equal,—these are sufficient grounds for supporting the payment made to the preferred creditor and for refusing to compel him to give over, in favor of other creditors bringing suits years afterwards, moneys appropriated in payment of an honest debt."

Having, therefore, reached a conclusion upon what I regard as the principles and authorities applicable to the case at bar, the other considerations urged in support of this conclusion, upon grounds of public policy, are worthy of a passing comment. Could the right of the defendant to retain the money be successfully assailed years afterwards, the result might be serious to creditors, general or preferred, who took any of their debtor's property under an assignment; for each creditor would then be at the mercy of every other creditor for at least six years, (the time limited for bringing an action under the Code,) during which, after a suit brought which resulted in a judgment declaring the assignment void, a creditor could recover back the moneys paid to a creditor under the assignment. As has been well said, nothing can be more injurious to mercantile prosperity than the feature of uncertainty. Human skill and industry can grapple with obstacles and difficulties mountain high, provided only they can be clearly seen. But uncertainty is too vague and shadowy an opponent to meet and overthrow. Therefore, in the absence of a direct controlling authority in this state, or of a certain legal principle to support it, the court may well hesitate to lay down a rule of law which would produce uncertainty and encourage litigation so far-reaching in its results, and one that, notwithstanding the great amount of litigation relating to insolvent assignments, has never before been invoked or applied. There should therefore be judgment for defendant on the demurrer.

---

## EMANUEL *v.* LA COMPAGNIE, ETC., DE VISCHY.

*(Supreme Court, Special Term, New York County.    October 30, 1888.)*

PRACTICE IN CIVIL CASES—PRODUCTION OF PAPERS.

R. entered into a contract for the purchase of certain goods from defendant, and afterwards made a contract with another for the purchase of similar goods, alleging that defendant had failed to fulfill his agreement. *Held,* in an action to re-

cover commissions from the defendant for the negotiation by plaintiff of the first · contract, that the production of the second contract could not be compelled, where it was objected that it was only material as affording a basis on which to compute the plaintiff's commissions, and that its production would disclose facts material to an action for the alleged breach of contract by the defendant.

Action by one Emanuel, brought in England against the La Compagnie, etc., de Vischy, to recover upon contract commissions alleged to be due plaintiff for having placed or negotiated a contract by which defendant was to supply the Rubinat Company of New York with the waters of certain mineral springs situate in Spain. A commission was issued out of the high court of justice in England to this city to examine witnesses and take testimony for use in that action, and, a subpœna having been issued in aid of the commission requiring one Tappin to appear and submit to an examination as a witness, and to produce a certain contract in his possession, Tappin objected to the production of such papers, and moved that the subpœna be vacated, on the grounds—*First*, that it was immaterial to the issues in said action; and, *second*, that he should not be required to disclose his private papers and private business. The contract was one by which one De Bofill, the owner of mineral springs in Spain, was to supply the Rubinat Company with the waters of such spring, and it appeared that Emanuel did not make any claim against the Rubinat Company, or against De Bofill, nor any claim for having placed the Rubinat Company contract with De Bofill. It also appeared that it was claimed that the defendant had broken its contract with the Rubinat Company, and that the contract with De Bofill was made in consequence of such breach, and long after the making of the former contract; that the disclosure of this contract would be prejudical to the Rubinat Company, because it has a valid claim and cause of action against defendant for its breach of contract, and such disclosure will put the defendant in possession of facts that will be material in the trial of that cause of action; and that the contract between De Bofill and the Rubinat Company was entirely immaterial in this action; and that the only way in which the transaction between the Rubinat Company and De Bofill is material is to show the amount of sales made thereunder, as a basis upon which to compute the commissions claimed by Emanuel, which were based upon the amount of the sales of water.

*Charles Robinson Smith*, for motion. *Salomon & Dulon*, contra.

BARRETT, J. The motion to vacate the subpœna is granted, and Mr. Tappin is relieved from the duty of producing the contract between the De Bofill and the Rubinat Company, specified in such subpœna.

---

ANTHON *v.* BACHELOR.

(*Supreme Court, Special Term, New York County.* March 13, 1889.)

MORTGAGES—RESALE—DEFICIENCY—LIABILITY OF PURCHASER.
Where the purchaser at a mortgage sale fails to complete his purchase, and the property is resold, he is not liable for any deficiency that may occur, unless an order of court is procured directing a resale at the purchaser's risk and on notice to him, though the terms of the first sale provided that the purchaser should be liable for any deficiency so occurring.

This was an action to foreclose a mortgage. At the sale on March 20, 1888, one George F. Johnson bid in the premises at $45,000, in the name of Thomas P. Meyer, signed Meyer's name to the terms of sale, and paid $1,000 deposit, as required by the terms of sale. The balance of the purchase money was payable on April 19th, but Johnson procured an adjournment to May 1st. On that day he went before the referee who had made the sale, and, as the representative of Meyer, refused to complete the contract. The referee reported this fact, and that he was informed and believe Meyer to be an irresponsible person. A resale was thereupon ordered, and one Louis J. Phillips became